**BIRD, MARELLA, BOXER, WOLPERT, NESSIM, DROOKS, LINCENBERG & RHOW, P.C**.
Mitchell A. Kamin—Bar No. 202788
   mak@birdmarella.com
David I. Hurwitz—Bar No. 174632
   dih@birdmarella.com
1875 Century Park East, 23rd Floor
Los Angeles, CA 90067-2561
Telephone:  (310) 201-2100
Facsimile:  (310) 201-2110

**CRAVATH, SWAINE & MOORE LLP**
Gary A. Bornstein (*pro hac vice*)
   gbornstein@cravath.com
825 Eighth Avenue
New York, NY 10019
Telephone: (212) 474-1000
Facsimile: (212) 474-3700

Attorneys for Defendants UTi Worldwide Inc., Eric Kirchner, Richard Rodick, Edward Feitzinger and Jeffrey Misakian

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| MICHAEL J. ANGLEY, *et al.*, <br><br>Plaintiff, <br><br>v. <br><br>UTI WORLDWIDE INC., *et al.*, <br><br>Defendants. | Case No. 2:14-CV-2066-CBM (Ex) <br><br>**REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS** <br><br>Judge:  Hon. Consuelo B. Marshall <br>Date:  August 25, 2015 <br>Time:  10:00 a.m. <br>Courtroom:  2 |

Defendants respectfully submit this reply memorandum in support of their motion to dismiss. To survive this motion, the Second Amended Class Action Complaint ("SAC") must adequately allege all three disputed elements of Plaintiff's claim (falsity, scienter and loss causation) with respect to the *same* statement. (Mem. 4.) Plaintiff does not deny, or even mention, this obligation.

## I.   PLAINTIFF FAILS TO PLEAD LOSS CAUSATION.

Contrary to the Court's ruling in the Dismissal Order that Plaintiff must plead loss causation under Fed. R. Civ. P. 9(b), Plaintiff repeatedly contends that the SAC need only "plausibly allege" loss causation. (Opp. 2, 23.) That lenient standard is drawn from cases applying Fed. R. Civ. P. 8(a)(2), as shown by Plaintiff's own citations. *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 346 (2005), assumed that Rule 8 applied, and the outdated case of *In re Gilead Sciences Sec. Litig.*, 536 F.3d 1049, 1057 (9th Cir. 2008), rested on the Rule 8 plausibility analysis in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). Under current Ninth Circuit law, Plaintiff must plead loss causation with particularity. *Oregon Pub. Emps. Ret. Fund v. Apollo Grp. Inc.*, 774 F.3d 598, 604 (9th Cir. 2014).

*Statements Concerning Disclosure Controls*.[1]  Plaintiff's opposition brief does not argue that these statements caused his loss. He has abandoned them.

*Statements Concerning Internal Controls Over Financial Reporting*.[2] Plaintiff does not adequately allege these statements caused his loss. His opposition brief does not dispute two relevant facts: (1) the announcement of a weakness in internal controls on March 31, 2014 did not cause Plaintiff's loss, and (2) the February 26, 2014 announcement on which he relies did not even mention UTi's internal controls. Instead, he contends that the news about UTi's *liquidity* disclosed on February 26 "related to alleged deficiencies in UTi's controls".

---

[1] *See* Index to Defendants' Motion to Dismiss (Dkt. 55-1) ("Index"), Statements 4, 7, 11, 16 and 17.

[2] *See* Index, Statements 5, 8, 12, 13 and 17.

1

(Opp. 24.) That argument conflates two very different things: accounting for transactions on the books, and real-world collections of cash. UTi's liquidity suffered in part because of the latter—it was not getting paid in a timely way. By contrast, internal controls are processes intended to ensure that a company gets its accounting right. (Mem. 20-21.) They have nothing to do with whether the company is able to bill and collect from its customers. Although Plaintiff dismisses this fundamental point as a "quibble over the definition of internal controls" (Opp. 25), difficulties in getting paid do not reveal, relate to, indicate or otherwise suggest that the company could not *account* for transactions accurately.

This sleight of hand—in which Plaintiff conflates recognizing revenue on the books with collecting cash in the real world—pervades Plaintiff's brief. Again and again, he asserts that UTi's liquidity problems were a "materialized risk" of alleged accounting, revenue recognition and data capture issues. (Opp. 10, 13, 23, 24.) Never, however, does his brief attempt to explain how the accounting on UTi's books had anything to do with whether customers were receiving and paying their bills. A footnote in the SAC makes a brief attempt to tie them together (SAC ¶ 237, n.3), but, as we showed, the accounting there is gobbledygook (Mem. 20-21), and Plaintiff's brief does not even attempt to defend it.

*Statements Concerning 1View/Oracle*.[3] These statements did not cause Plaintiff's loss. His key argument is that "by misrepresenting the success of 1View/Oracle", Defendants "concealed that UTi's liquidity was deteriorating and could continue to deteriorate". (Opp. 23-24.) Far from concealing its deteriorating liquidity, UTi repeatedly disclosed its decreasing cash, increasing receivables, consistent net losses and amendments to debt covenants. (Mem. 22.) Plaintiff does not challenge the accuracy of these disclosures.[4] As for the risk that liquidity

---

[3] *See* Index, Statements 1-3, 6, 9-10, 14-15 and 18.
[4] Plaintiff tries to imply on the last page of his brief that there were inaccuracies in UTi's financial disclosures by asserting that Defendants "admitted

2

"could continue to deteriorate" due to invoicing delays, this "materialization of risk" argument fails. Not only has the Ninth Circuit not adopted that loss causation theory (Mem. 23), but Plaintiff has not satisfied it: he has not pled facts showing that it was "foreseeable" for the invoicing delays to lead to the major liquidity problems disclosed on February 26. *Lentell v. Merrill Lynch & Co.*, 396 F.3d 161, 172-74 (2d Cir. 2005). His sole argument is that a jury could find foreseeability based on the fact that, with hindsight, Defendants attributed the liquidity problem in part to invoicing delays. (Opp. 24.) But it is a general principle of law that "hindsight is not the test for foreseeability". *See First Interstate Bank of Arizona, N.A. v. Murphy, Weir & Butler*, 210 F.3d 983, 989 (9th Cir. 2000). The SAC does not allege—much less with particularity—facts showing that a Defendant foresaw, or should have foreseen, that the delays in sending bills were so significant that they could lead to a major liquidity shortfall and the need for external financing.

## II. PLAINTIFF FAILS TO PLEAD SCIENTER.

Plaintiff's scienter argument rests entirely on the generalized contention that Defendants were aware of certain "problems" or "issues" with 1View and Oracle. But the SAC is not nearly specific enough about what each Defendant supposedly knew (or when he knew it) and how that information contradicted what he said (when he said it), so as to create a "strong inference" that a Defendant deliberately misrepresented the facts. 15 U.S.C. § 78u-4(b)(2)(A). The SAC alleges that at various times certain Defendants participated in meetings in which people discussed a problem with the new systems. But it does not allege facts showing that, at the time any Defendant made a Non-Dismissed Statement, he was aware of specific contradictory information that was of such significance that an inference

---

that the material weaknesses affected financial reporting". (Opp. 25.) This is another sleight of hand. A material weakness is a deficiency in the *processes* for preparing financial statements. Despite that weakness in controls, the content of UTi's liquidity disclosures was accurate, and the SAC does not allege otherwise.

3

of deliberate misconduct is "cogent and at least as compelling as any opposing inference". *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 324 (2007).

*Confidential Witnesses.* The confidential witness allegations do not show scienter. The Court already held that the allegations of CW1, CW2, CW4, CW5, CW6 and CW7 were insufficient to indicate scienter. (Dismissal Order at 4.) Their allegations have not substantively changed in the SAC, and Plaintiff gives no reason for the Court to reconsider its prior holding. Nor does Plaintiff's opposition brief defend CW11, CW12, CW13 or CW14—all of whom lack personal knowledge and do not allege what any Defendant knew. (Mem. 16-19.)

The CWs that Plaintiff does attempt to defend are flawed as well. CW10 alleges that Kirchner was on a call at best five months *before* the alleged class period (Opp. 18), which is irrelevant to his state of mind at the time of his challenged statements. CW3 and CW9 seek to show that Rodick was aware of a weakness in internal controls, but their allegations fall short. CW9 focuses on routine "SOX compliance" calls (SAC ¶ 114) that ended on March 31, 2013, just three days after the alleged class period began. CW3's allegations about Rodick end in June 2013 and are the same ones the Court already found not to indicate scienter, except for a change in the year certain meetings—which CW3 did *not* attend—are alleged to have occurred. The matters discussed by CW3 and CW9 are unremarkable efforts by UTi's finance personnel to monitor and refine the company's internal controls. Their allegations do not show that Rodick was aware of such a serious weakness in UTi's internal controls as to create a strong inference that his statements in March and June 2013 were fraudulent.

That leaves CW8 and CW15, whose allegations are far too general to support an inference of scienter. The Court already so held with respect to CW8 (Dismissal Order at 4), whose allegations have not been amended. As for CW15, contrary to Plaintiff's assertions, the witness did not say Defendants were aware of "serious problems with 1View/Oracle" and "major problems . . . experienced in

4

other countries". (Opp. 17.) Instead, the only specific issues CW15 identified, which he or she said were the main problems with the systems, were mundane technical matters, *i.e.*, the "linkage" between 1View and Oracle and system slowdowns. (SAC ¶ 133.) On the key issue of invoicing delays, which was the *only* problem with 1View and Oracle disclosed at the end of the alleged class period, CW15 is silent. That strongly *cuts against* an inference of scienter. The former President of the Americas, who is the only CW alleged to have been in regular direct contact with some Defendants, did not say that he or she, or any Defendant, was aware of invoicing delays—much less that any Defendant was aware of a problem serious enough to threaten the company's liquidity.

*Motive.* Defendants' lack of a profit motive further undermines any inference of scienter. While not dispositive by itself, it clearly undercuts any such inference. (Mem. 14.) Because Plaintiff's other efforts to plead facts with respect to each Defendant's state of mind are so weak, the "lack of *any* tangible, personal benefit" should weigh heavily in the Court's analysis. *In re Wet Seal Sec. Litig.*, 518 F. Supp. 2d 1148, 1177-78 (C.D. Cal. 2007) (emphasis in original).

*Core Operations*. Lacking adequate specific allegations as to any Defendant, Plaintiff falls back on the "core operations" doctrine. (Opp. 19-20.) The Ninth Circuit has held that "[a]s a general matter, corporate management's general awareness of the day-to-day workings of the company's business does not establish scienter" by itself. *S. Ferry LP, No. 2 v. Killinger*, 542 F.3d 776, 784-85 (9th Cir. 2008). The core operations doctrine is an "exception[] to this general rule", which is limited to situations in which the "facts [are] prominent enough that it would be absurd to suggest that top management was unaware of them." *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1000-01 (9th Cir. 2009). Such cases are "extremely rare". *S. Ferry LP, No. 2*, 542 F.3d at 785 n.3. As the Ninth Circuit said in affirming a dismissal last year: "Proof under this theory is not easy. A plaintiff must produce either [1] *specific admissions* by one or more corporate

5

executives of detailed involvement in the minutia of a company's operations, such as data monitoring; or [2] witness accounts demonstrating that executives had *actual involvement* in creating false reports." *Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*, 759 F.3d 1051, 1062 (9th Cir. 2014) (emphasis added).

Plaintiff has done neither. There are no "admissions" by any Defendant of contemporaneous involvement in the minutia of the software systems at issue. And no CW contends that any Defendant had "actual involvement" in creating relevant reports. The deficiency in the SAC is highlighted by contrasting it with the cases Plaintiff cites. In *Mulligan v. Impax Labs., Inc.*, 36 F. Supp. 3d 942, 970 (N.D. Cal. 2014), the facts at issue were the subject of repeated warnings to the company by the FDA. And in *In re Am. Apparel, Inc. S'holder Litig.*, 2013 WL 174119, at *22 (C.D. Cal. Jan. 16, 2013), the facts at issue were the subject of an ongoing federal investigation and resulted in "the termination of at least 1,500 employees". There was nothing comparable at UTi to bring the disputed facts to Defendants' attention.[5] It is hardly "absurd" to suggest that UTi's most senior management would not know the nitty-gritty of a software implementation.

Plaintiff's effort to impose an affirmative duty on Misakian and other Defendants to investigate and verify each of their statements in advance (Opp. 22) is a misstatement of the law. It is true that "deliberate recklessness" can suffice to show scienter, but that requires "some degree of intentional or conscious misconduct". *Reese v. Malone*, 747 F.3d 557, 569 (9th Cir. 2014). Asserting that Defendants should have double-checked their facts before speaking is not enough; Plaintiff would need to plead "a highly unreasonable omission, involving not merely simple, or even inexcusable negligence, but an *extreme departure* from the

---

[5] The subsequent SEC inquiry relating to UTi obviously could not have alerted Defendants to any implementation issues contemporaneously. As for Kirchner's subsequent resignation, Plaintiff "must allege sufficient information to distinguish between a suspicious change in personnel and a benign one". *Zucco*, 552 F.3d at 1002. Here, he alleges no such facts at all.

6

REPLY MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF MOTION TO DISMISS

CASE NO. 2:14-CV-2066-CBM (EX)

standards of ordinary care, and which presents a danger of misleading buyers or sellers that is either known to the defendant or so obvious that the actor must have been aware of it". *Zucco*, 552 F.3d at 991 (emphasis added).  He has not done so.

### III. PLAINTIFF FAILS TO PLEAD ACTIONABLE MISSTATEMENTS.

Much of Plaintiff's argument with respect to falsity is directed at statements that the Court has already held to be inactionable as a matter of law.  (Dismissal Order at 2-3.)  There is no reason to revisit those rulings, both on the merits and as law of the case.  Contrary to Plaintiff's contention, courts in the Ninth Circuit have repeatedly held that the "law of the case" doctrine applies before a court has been divested of jurisdiction.  *United States v. Phillips*, 367 F.3d 846, 856 (9th Cir. 2004); *Vanleeuwen v. Keyuan Petrochemicals, Inc.*, 2013 WL 2247394, at *7-10 (C.D. Cal. May 9, 2013) (decision on first motion to dismiss a securities fraud complaint was law of the case on second motion).  The cases cited by Plaintiff affirm the Court's *power* to revisit its prior rulings in certain circumstances—such as clear error, an intervening change of law, new evidence or manifest injustice, *see Vanleeuwen*, 2014 WL 2247394, at *7—but disregarding a prior ruling "absent one of the requisite conditions constitutes an abuse of discretion", *Phillips*, 367 F.3d at 856 n.35.  Plaintiff has not argued that any of the relevant circumstances is present here.[6]  Accordingly, if the SAC is to survive, it must be on the basis of a Non-Dismissed Statement.  But the SAC does not cure Plaintiff's failures to plead falsity with respect to those statements.  (Dismissal Order at 3.)

---

[6] To the extent Plaintiff suggests that *Omnicare Inc. v. Laborers Dist. Council Constr. Indus.*, 135 S.Ct. 1318 (2015), is a relevant change in the law of materiality (*see* Opp. 5, 9-10, 14), he is wrong.  *Omnicare* addressed how the strict liability standard of § 11 of the Securities Act of 1933, 15 U.S.C. § 77k, applies to a statement of opinion.  It did not mention, let alone "expand" (Opp. 10), the § 10(b) materiality test looking at whether a fact would "significantly alter[] the total mix" of available information.  *Basic Inc. v. Levinson*, 485 U.S. 224, 232 (1988).  (And the test has never been, as Plaintiff misstates it, merely whether an investor would view a fact "as significant".  (Opp. 10.))

7

*Statements on 1View Progress.*  We have shown that the three remaining Non-Dismissed Statements regarding the progress of the 1View implementation, which were made by Kirchner and Misakian, are not adequately alleged to have been false when made.[7]  (Mem. 8-11.)  In response, Plaintiff does not specifically address the substance of any of the three statements, but instead lumps them in with several other challenged statements and argues generally that all of them were false or misleading.  As in the SAC, he does not attempt to tie specific allegations of fact to these specific challenged statements.

This failure to get specific fatally undermines Plaintiff's claim.  For example, allegations regarding initial rollouts in 2012 (Opp. 7) cannot show the falsity of Kirchner and Misakian's statements in June and September 2013.  Likewise, Plaintiff contends that 1View was "crippling UTi's liquidity by preventing it from collecting tens of millions of dollars in receivables" (Opp. 10), but his support for that assertion is the disclosure of "recent invoicing delays" in the U.S. rollout.  (SAC ¶ 226.)  Because the latest challenged statement was made in early December 2013, this disclosure of "recent" delays does not show falsity—particularly with respect to the Non-Dismissed Statements by Kirchner and Misakian made many months earlier.  Even in his more general effort to relitigate other statements regarding 1View's progress, Plaintiff substantially overstates what the SAC says about invoicing delays.  For example, no CW alleges that UTi was "unable to collect revenue" (Opp. 14) or that 1View was "preventing UTi from collecting its receivables" (Opp. 16).  The CWs allege only that invoices were *delayed*, which is a materially different problem from not collecting revenue at all.  Similarly, Plaintiff contends that generating invoices was the "key function" of 1View/Oracle (Opp. 11; *see id.* 10 ("main function")), but the SAC makes clear that invoicing was just one piece of a broader effort "to automate and standardize

---

[7] *See* Index, Statements 6, 10 and 15.

the Company's business processes, on a global level". (SAC ¶ 58.)

When these various exaggerations are corrected, Plaintiff's contention that Defendants misled investors by omitting information falls away. An omitted fact is material if there is "a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the total mix of information made available." *Basic*, 485 U.S. at 231-232. The total mix of information available to UTi's investors included: (i) repeated disclosures of risks posed by the 1View/Oracle rollout (Mem. 2); (ii) disclosures of actual challenges encountered in the rollout (Mem. 9-11); and (iii) repeated disclosures of UTi's declining liquidity, increasing receivables, consistent net losses and the need for successive amendments to the financial covenants in its loan agreements. (Mem. 2-3.) A statement that UTi was slow in issuing invoices would not have significantly altered the total mix.

*Risk Factors.* In response to the rule of *Zeid v. Kimberley*, 930 F. Supp. 431 (N.D. Cal. 1996), that risk disclosures cannot form the basis for a Rule 10b-5 claim, Plaintiff relies on a substantively truncated quote from *Brody v. Transitional Hospitals Corp.*, 280 F.3d 997 (9th Cir. 2002). Twice in his brief, Plaintiff states, without ellipses, that a statement is misleading under *Brody* if it "can give a reasonable investor an 'impression of a state of affairs that differs from the one that actually exists'". (Opp. 3, 15.) But the case actually holds that in order to be misleading, an omission "must *affirmatively* create an impression of a state of affairs that differs *in a material way* from the one that actually exists." *Brody*, 280 F.3d at 1006 (emphasis added). The emphasized words, which Plaintiff omitted, are vital to *Brody*'s central holding that "a statement will not mislead even if it is incomplete or does not include all relevant facts. . . . No matter how detailed and accurate disclosure statements are, there are likely to be additional details that could have been disclosed but were not." *Id*.

Courts in the Ninth Circuit have repeatedly relied on *Brody*'s rejection of a

"freestanding completeness requirement", *In re Intuitive Surgical Sec. Litig.*, 65 F. Supp. 3d 821, 836 (N.D. Cal. 2014), to dismiss arguments identical to Plaintiff's. For example, in *Intuitive Surgical*, it was alleged that "Risk Factors" in SEC filings were misleading because they failed to disclose information regarding defects with Intuitive's sole product. The Court relied on *Brody* to reject this argument, holding that "while the disclosures may have been incomplete for failing to disclose the exact number of lawsuits, they were not plausibly misleading because Intuitive made it explicitly clear through them that products liability lawsuits can and will continue to be a risk to its future revenues". *Intuitive Surgical*, 65 F. Supp. 3d at 836. Here too, the risk factors did not "affirmatively" create an impression that the 1View and Oracle implementations were trouble-free. Thus, both *Zeid* and *Brody* justify rejecting Plaintiff's attack on UTi's risk disclosures.

*Statements Made By Other Defendants*. Feitzinger and Misakian cannot be liable under § 10(b) for statements they did not make. *Janus Capital Grp., Inc. v. First Derivative Traders*, 131 S. Ct. 2296, 2303 (2011). Plaintiff's reliance on *In re Pfizer Sec. Litig.*, 936 F. Supp 2d 252 (S.D.N.Y. 2013), is misplaced. *Pfizer* expressly applied *Janus* and found that the individual defendants there had "made" statements in SEC filings and press releases because they had "ultimate authority" over the issuance of those documents. *Id* at 268-69. There are no allegations here to suggest that Feitzinger or Misakian, who did not sign UTi's SEC filings, "made" any challenged statement other than ones that came out of his mouth.

## IV. PLAINTIFF FAILS TO PLEAD "CONTROL PERSON" LIABILITY

Plaintiff's "control person" claims under Section 20(a) should be dismissed because of his failure to plead (1) an underlying violation, and (2) that Feitzinger or Misakian exercised actual power or control. (Mem. 25.)

## V. CONCLUSION

Defendants request that the SAC be dismissed with prejudice. Plaintiff has not given any reason he should receive further leave to amend.

| | | |
|---|---|---|
| 1 | DATED:  August 7, 2015 | Mitchell A. Kamin |
| 2 | | David I. Hurwitz |
| | | BIRD, MARELLA, BOXER, |
| 3 | | WOLPERT, NESSIM, DROOKS, |
| 4 | | LINCENBERG & RHOW, P.C. |

By:  */s/ David I. Hurwitz*
       David I. Hurwitz

Gary A. Bornstein
CRAVATH, SWAINE & MOORE LLP

*Attorneys for Defendants UTi Worldwide Inc., Eric Kirchner, Richard Rodick, Edward Feitzinger and Jeffrey Misakian*

11

REPLY MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF MOTION TO DISMISS

CASE NO. 2:14-CV-2066-CBM (EX)